**Robert W. Smith, Esq.**
**Christopher J. Eibeler, Esq.**
**SMITH EIBELER, LLC**
**101 Crawfords Corner Road, Suite 1-105R**
**Holmdel, New Jersey 07733**
**(732) 444-1300**
**Attorneys for Plaintiff**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------**X**

                                :

**GREG MANNING,**                  :     **CASE NO: 1:17-cv-02824-RMB-JS**

                                :

         **Plaintiff,**         :

**v.**                          :

                                :

**SAFELITE FULFILLMENT, INC., et al,**  :

                                :

        **Defendants.**       :

                                :

-----------------------------------------------------------**X**

_____

### PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR
### JUDGMENT BASED ON SPOLIATION OF EVIDENCE
_____

On the Brief:
Robert W. Smith, Esq.
David J. Franzmathes, Esq.

Dated:  October 5,  2020

1

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................2

LEGAL ARGUMENT ...................................................................................................5

I.     Defendants Fail to Meet Their Burden to Estabish a Claim of Spoliation ..............5

       A.     Emails to Safelite ..............................................................................6
       B.     Emails to Clear Vision.......................................................................7
       C.     Emails to Nicholas Walters ...............................................................9
       D.     Facebook Messages Between Plaintiff and Stephen McCafferty ..............9
       E.     Other Unspecified Emails.................................................................10

II.    Dismissal is Not Warranted in This Case........................................................11

       A.     Plaintiff's Degree of Fault in Deleting Messages Was Minimal................12
       B.     Defendants Have Suffered No Prejudice ...................................................13
       C.     Dismissal is Not an Appropriate Sanction ...................................................16

III.   There Can Be No Adverse Inference Because Defendants Can Only
       Speculate as to the Existence of Relevant Messages ...........................................18

IV.   Monetary Sanctions Are Inappropriate and Would Cause Plaintiff
       Undue Hardship......................................................................................20

CONCLUSION ...................................................................................................24

Legal Table of Authorities

Baliotis v. McNeil, 870 F. Supp. 1285 (M.D. Pa. 1994).................................................................12

Balthazar v. Atlantic City Med. Ctr., 137 Fed. Appx. 482 (3d Cir. 2005) ........................................21

Bensel v. Allied Pilots, Ass'n, 263 F.R.D 150 (D.N.J. 2009)........................................................5,19

Bull v. United Parcel Serv., Inc., 665 F.3d 68 (3d Cir. 2012).........................................................5,6

Coyne v. Los Alamos Nat'l Sec. LLC, 2017 U.S. Dist. LEXIS 67021 (D.N.M. March 21, 2017) ...16,17

Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191 (3d Cir. 1998) .....................20,21

Faraci v. Hickey-Freeman Company, Inc., 607 F. 1025 (2d Cir. 1979).......................................20

Flanders v. Dzugan, No. Civ. A. 12-1481, 2015 WL 5022734, at *5
(W.D. Pa. Aug. 24, 2015)............................................................................................................5,18

In re Krause, 367 B.R. 740 (Bankr. D. Kan. 2007), aff'd No. 08-1132, 2009 WL 5064348
(D. Kan. Dec. 16, 2009), aff'd 637 F. 3d 1160 (10th Cir. 2011).......................................................17

Int'l Fin. Co., LLC v. Jabali-Jeter, No. 18-CV-2120, 2019 WL 2268961, at *17
(E.D. Pa. May 28, 2019) ...............................................................................................................12

Kuhar v. Petzl Co., No. 16-03952018, U.S. Dist. LEXIS 205042 (D.N.J. Nov. 16, 2018)...................5

Lieb v. Topstone Indus., Inc., 788 F.2d 151 (3d Cir. 1986)...........................................................21

Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332 (D.N.J. 2004) ........................11,12

Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers, 855 F. 2d
1080 (3d Cir. 1988) ......................................................................................................................21

OmniGen Research v. Yongqiang Wang, 321 F.R.D. 367 (D. Or. 2017) ........................................18

Philips Elecs. N. Am. Corp. v. BC Tech., 773 F. Supp. 2d 1149 (D. Utah 2011).............................17

Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76 (3d Cir. 1994)............................................12,21

Soo San Choi v. D'Appolonia, 252 F.R.D. 266 (W.D. Pa. 2008) ....................................................21

United States Steel Corp. v. United States, 519 F2d 359 (3d Cir. 1975) .......................................20

U.S. v. Nelson, 481 Fed. Appx. 40 (3d Cir. 2012) ...........................................................................5

## Court Rules

Fed. R. Civ. P. 37 ...........................................................................11,16,19,21

**PRELIMINARY STATEMENT**

Contrary to Defendants' claims, Plaintiff has not spoliated any evidence.   Plaintiff produced all relevant documents that he had in his possession prior to the commencement of this litigation.   Indeed, Defendants have failed to point, with specificity, to any relevant documents that Plaintiff has purportedly spoliated. With respect to all documents Defendants point to, defendants have not been deprived of the information to use in this litigation as they either possess the document, have access to it, or are fully aware of the content of the document. To support their claims, Defendants twist the available testimony to extents that defy any reasonable interpretation. The Court should not allow Defendants' claim to survive based solely on Defendants' creative and unique approach to representing testimony in the record.

In the event that this Court finds there is spoliation, Plaintiff's degree of fault is minimal. Plaintiff is not an individual who is well versed in technology. Plaintiff's deletion of email and social media message stems from his belief that in doing so he would speed up his iPhone. It was never Plaintiff's intention to deprive Defendants of information. In fact, Defendants have not been.   Defendants have suffered no prejudice in this matter and Defendants intentions with respect to this motion are entirely opportunistic.

Defendants prayer for dismissal in this matter is frankly outrageous. The circumstances necessary to warrant dismissal are simply absent in this matter. The cases upon which Defendants rely make that abundantly clear and do not support dismissal of this action. Moreover, with respect to an adverse inference, Defendants fail to point to any spoliated evidence with the sort of specificity required to formulate an adverse inference. Finally, Plaintiff has virtually no savings and his family lives paycheck to paycheck entirely off his wife's modest

income. Monetary sanctions in this matter would financially ruin Plaintiff and his family. Equity militates against any action that would result in such an outcome.

For the reasons set forth below, it is respectfully requested that Defendants' motion be denied in its entirety.

## STATEMENT OF FACTS

Plaintiff produced all responsive documents that he had in his possession at the time of his first document production in August 2017. Certification of Gregory Manning dated October 5, 2020 ("Manning Cert.") at 7-9.  Prior to retention of counsel and pursuit of a potential claim against Safelite, Plaintiff had a practice of deleting emails and messages from his iPhone on a regular basis. Manning Cert. at 3-4. Prior to the initiation of litigation, Plaintiff conducted a search of his email and social media accounts and provided all potentially relevant documents in his possession, including emails and social media messages, to counsel. Manning Cert. at 7. While he did not recall this fact during his deposition, Plaintiff subsequently reviewed responses to his document request and now recalls that he searched through his email and social media multiple times in connection with this litigation and produced all relevant documents which existed at that time to counsel. Manning Cert. at 6. At that time the only email or social media message Plaintiff had in his possession was the single email that was produced, bearing Bates No. P-0001-03. Manning Cert. at 9, Ex. A. On August 16, 2017, Plaintiff responded to Defendant Safelite Fulfillment, Inc.'s Requests for Production of Documents. Manning Cert. at 9. In connection therewith, Plaintiff again conducted a search of his email and social media for potentially relevant documents and other documents requested in connection with the discovery. Manning Cert. at

8. Plaintiff found no other responsive email or social media messages in addition to what had previously been provided to counsel. Manning Cert. at 8.

In or after 2018, Plaintiff began experiencing performance issues with respect to the processing speed of his iPhone. Manning Cert. at 11-12. To remedy this issue, Plaintiff brought the device to an Apple Store seeking technical support. Manning Cert. at 13. While at the Apple Store, an Apple employee advised Plaintiff that large quantities of emails and messages stored on his phone could negatively affect his phone's performance and recommended that he delete any items occupying space on his phone. Manning Cert. at 14. As a result, Plaintiff deleted all emails and other messages stored on the phone, including clearing out messages lingering in the "deleted" folders. Manning Cert. at 15. Plaintiff did this solely as an attempt to resolve the issues he was having with his iPhone. Manning Cert. at 16. Notably, this occurred following Plaintiff's first production of documents. Manning Cert. at 11, 16.

Plaintiff is unsophisticated with respect to technology and has no knowledge of how ESI is maintained. Manning Cert. at 22. Plaintiff never deleted any messages while using his computer; the deletions were  limited only to those messages stored on his iPhone. Manning Cert. at 21. While Plaintiff was aware that the messages he was deleting would be removed from his iPhone, Plaintiff was unaware that by deleting messages from the applications on his phone, that those messages would no longer be retrievable by him personally from other sources, such as cloud-based storage operated by his email provider. Manning Cert. at 18-20. It was not until recently that Plaintiff learned that the deletion of messages from his iPhone would render those messages personally irretrievable by Plaintiff. Manning Cert. at 20.

Contrary to Defendants' assertion, Plaintiff did not testify to "deleting emails to Clear Vision Auto Glass, which referenced his termination from Safelite, as well as, [sic] his application for employment with Clear Vision Auto Glass." Cf. Def. Br. at 3;  Pl. Dep. at 67 (the cited pages of Plaintiff's Deposition dated May 11, 2020 are attached to Certification of David J. Franzmathes, Esq. ("Counsel Cert.") at Ex. A). Rather, in response to the question: "Did you communicate with Anthony or anybody else at Clear Vision through e-mail?" Plaintiff testified: "To the best of my recollection, I think so, I think I e-mailed him, but I don't know." Id.  At no time, in his deposition, was he asked if he deleted emails which referenced his termination from Safelite or his application for employment with Clear Vision. Id.

Similarly, Plaintiff never responded, "'I don't recall," when asked if he deleted any other relevant emails or Facebook messages. Pl. Dep. at 262, 297. Indeed, Defendants never asked Plaintiff whether he recalls deleting any other relevant emails or Facebook messages, generally. Id. Instead Defendants' asked: (1) "Did you communicate with anybody else on Facebook aside from Steve McCafferty regarding your employment from Safelite, your separation from Safelite, your lawsuit or your allegations in this case?" and (2) "And is this the only e-mail that you sent to anybody in HR, People Direct, or Greg Byrd while you were out on administrative leave?," to which Plaintiff responded, "I don't recall." Id. Contrary to Defendants' assertions, Plaintiff's testimony is devoid of any indication that any other **relevant** emails ever existed. Id. Moreover, Plaintiff produced all relevant emails in his possession at the time this litigation commenced. Manning Cert. at 7-9.

## LEGAL ARGUMENT

**I.      Defendants Fail to Meet Their Burden to Establish a Claim of Spoliation**

"Spoliation occurs where: [1] the evidence was in the party's control; [2] the evidence is relevant to the claims or defenses in the case; [3] there has been actual suppression or withholding of evidence; and, [3] the duty to preserve the evidence was reasonably foreseeable to the party." Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012). Furthermore, "[t]he party seeking sanctions bears the burden of proof as to each element of the prima facie claim." Kuhar v. Petzl Co., No. 16-03952018, U.S. Dist. LEXIS 205042 (D.N.J. Nov. 16, 2018).

Defendants' fail to meet their burden to show actionable spoliation. "A proper spoliation claim requires the moving party to set forth evidence with specificity." Flanders v. Dzugan, No. CIV.A. 12-1481, 2015 WL 5022734, at *5 (W.D. Pa. Aug. 24, 2015). Indeed, "[i]n the absence of a showing that specific evidence was 'destroyed in order to prevent it from being used by the adverse party, a spoliation instruction is improper.'" Id. (quoting U.S. v. Nelson, 481 Fed. Appx. 40, 42 (3d Cir.2012); see also Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 153 (D.N.J.2009) ("[C]atch-all statement[s], along with vague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation"). Defendants identify five (5) categories of evidence through which they seek to establish spoliation: (1) emails sent to Safelite; (2) emails sent to Clear Vision; (3) an email from Nicholas Walters; (4) a Facebook message between Plaintiff and Stephen McCafferty;   and (5) other unspecified emails or messages. With respect to each of these categories, Defendants fail to support a claim for spoliation and each will be addressed, in turn, herein.

### A.     Emails to Safelite

With respect to emails to and from Safelite, as an initial matter, Defendants have failed to meet the threshold inquiry of Federal Rule 37(e) that Plaintiff deleted these emails with the "intent to deprive another party of the information's use in litigation." By virtue of these emails being sent to and from Safelite, Safelite has access to each of the emails in this category. Accordingly, it is impossible for Plaintiff, by deleting emails from his iPhone, to deprive Defendants of the information to be used at trial. As a result, any email communications between Plaintiff and Safelite, including to Greg Byrd, HR, or People Direct, fail to act as a viable basis for a claim of spoliation.

Further, Defendants have failed to establish that the "duty to preserve the evidence was reasonably foreseeable to [Plaintiff]." Bull, 665 F.3d at 73. Defendants claim that they "know Plaintiff deleted additional relevant emails, given that Safelite produced additional emails that originated from Plaintiff's personal email account." Def. Br. at 3. In support, Defendants have attached two (2) emails sent from Plaintiff's personal email account to Safelite. Id. at Ex. F. The first is an email sent from Plaintiff to Grey Bryd, a Safelite People Business Partner (Human Resources), dated August 17, 2016. This email was sent several months before Safelite's termination of Plaintiff's employment. It cannot be said that any duty to preserve emails between himself and Safelite was reasonably foreseeable at that time. Therefore, Defendants' reliance on this email has no impact on Defendants' ability to show spoliation.

The second email Defendants point to is an email exchange between Plaintiff and Danielle Sennet, a Safelite Leave of Absence Specialist, dated December 8, 2016, one (1) day after Safelite terminated Plaintiff's employment. The substance of the exchange consists of a request by

Plaintiff for Ms. Sennet to forward him a copy of the ADA paperwork he had previously submitted to her in August 2016 and Ms. Sennet's response forwarding the documents. While Plaintiff is no longer in possession of the email chain, Plaintiff produced the attached requested documents in Plaintiff's first production of documents, bearing Bates number P-0005-0011. Manning Cert. at 10, Ex. C. Defendants have failed to show how this email is in any way relevant to any of the claims or defenses in this case, besides their conclusory assertion that it is. Surely, Plaintiff's request for the ADA paperwork and Ms. Sennet's response have no impact on liability or damages in this matter. As the substance of this email chain is irrelevant to any claims or defenses, Defendants have failed to show that Plaintiff had any duty to preserve this email.

Defendant's assertion that these two emails indicate that the Plaintiff deleted additional relevant emails is precisely the sort of speculative conclusion that courts have repeatedly found to be an improper basis to show spoliation. Indeed, Defendants point to no specific relevant emails to or from Safelite that were either deleted following the point at which any duty to preserve was reasonably foreseeable to Plaintiff or from which Safelite was deprived of information to use in this litigation. Accordingly, this category of emails cannot be utilized for the establishment of Defendants' prima facie case.

**B.      Emails to Clear Vision**

Defendants' description of Plaintiff's testimony concerning Clear Vision is entirely disingenuous. Plaintiff did not testify as to the existence of any emails to Clear Vision regarding his termination from Safelite or his employment application with Clear Vision. Rather, Plaintiff testified that he **spoke** with Anthony Marcolongo, during his interview with Clear Vision, and when asked about the separation of his employment with Safelite, he testified that Mr.

Marcolongo asked "just how it ended" and that he responded "I told him that I was falsely terminated." Pl. Dep. at 66. The extent of Plaintiff's testimony regarding email communications with Clear Vision was in response to the question: "Did you communicate with Anthony or anybody else at Clear Vision through e-mail?" Plaintiff responded, "To the best of my recollection, I think so, I think I emailed him [Anthony], but I don't know." To suggest that Plaintiff spoliated email communications with Clear Vision regarding his termination from Safelite and his employment application based on this testimony is outside the scope of any reasonable interpretation and is wholly without merit. Defendants' attempt to conflate Plaintiff's testimony concerning the content of any oral interview with the content of any email communications is baseless and should not be given any credence.

Additionally, Defendants had the opportunity to subpoena documents from Clear Vision, including any email communication with Plaintiff concerning his employment with Safelite. Clear Vision produced documents in response to Defendants' subpoena and did not produce a single email. Defendants have failed to meet their burden to show that Plaintiff deleted any emails that he **may** have sent to Clear Vision, that those emails were relevant to any claims or defenses in this matter, or that he did so with with the intent to deprive Defendants from the information to use in this litigation.

Because Defendants have not identified a basis to conclude that any relevant email existed between Plaintiff and Clear Vision, Defendants have hailed to show that Plaintiff spoliated or had any obligation to preserve any specific email between him and Clear Vision.

### C.      Email from Nicholas Walters

Defendants did not ask during Plaintiff's deposition about the substance of the email from Nicholas Walters, but rather only the format by which Nicholas Walters sent the documents to Plaintiff. If such an email did exist, similar to the email chain with Dannielle Sennet, within Exhibit F to the Cert. of Daniel Clark, the contents of this email from Nicholas Walters is irrelevant and subject to no duty to preserve. Therefore, Defendants have no basis to claim that the content of any such email was relevant to the claims and defenses in this matter. Accordingly, the only relevant component of the email from Nicholas Walters would have been the attached documents. Plaintiff did not destroy those attached documents.  Rather, Plaintiff produced them, at Bates number P-0067-70. Manning Cert. at 10, Ex. B. To the extent that it is relevant that Nicholas Walters sent Plaintiff an email attaching these documents, Plaintiff confirmed that in his deposition. Pl. Dep. at 296. Additionally, this email would have been sent and received prior to Plaintiff's termination, and no duty to preserve would have been reasonably foreseeable to Plaintiff at that time. If this email ever existed, it no longer existed at the time litigation was commenced.

### D.      Facebook Messages Between Plaintiff and Stephen McCafferty

With respect to the deletion of Facebook messages, Plaintiff has only ever deleted messages from his personal Facebook Messenger. Plaintiff has not deleted any Facebook messages such that they would no longer be visible to any other party to the message. Accordingly, any Facebook message sent by Plaintiff to Stephen McCafferty was not deleted from Mr. McCafferty's personal Facebook Messenger by Plaintiff. Mr. McCafferty is still a Safelite employee. Certainly, then, Defendants should have access to this Facebook message or its

content through Mr. McCafferty. Furthermore, Defendants acknowledge that they have confirmed the message's existence through other sources. Def. Br. at 9. Therefore, Defendants are unable to show any prejudice with respect to this message.

Furthermore, Defendants asked Plaintiff in his deposition, "After you found out that it was Steve who did the warranty work, did you send him a message on Facebook asking him why he didn't tell you that it was him that did the warranty work?" Pl. Dep. at 291. Defendants inquired no further about the substance of this message or any other messages. Assuming, *arguendo*, that this message did in fact exist, it is challenging to see how the message would be relevant to any claims or defenses in this matter. Because the content of this message is irrelevant, it was not subject to any duty to preserve. Furthermore, to the extent that Plaintiff sending the message, alone, is relevant, Plaintiff replied, "I do recall sending him a message, yes." Id. It would seem, then, that Defendants discovered the information they needed. To the extent the message ever existed, it did not exist at the time Plaintiff reviewed his Facebook messages prior to the initiation of litigation.

### E.    Other Unspecified Emails

Defendants' claim that "Plaintiff responded with 'I don't recall' when asked if he deleted any other relevant emails or Facebook messages", Def. Br. at 3, is entirely disingenuous.  Plaintiff responds "I don't recall" to only two questions[1]: "Did you communicate with anybody else on Facebook aside from Steve McCafferty regarding your employment from Safelite, your separation from Safelite, your lawsuit or your allegations in this case?" and (2) "[a]nd is this the

---

[1] Plaintiff's response on line 3 of page 292 refers to the deletion of the Facebook message between himself and Stephen McCafferty and was clearly not the basis of Defendants' claim that Plaintiff responded with 'I don't recall' when asked if he deleted any other relevant emails or Facebook messages". Def. Br. at 3.

only e-mail that you sent to anybody in HR, People Direct, or Greg Byrd while you were out on administrative leave?" It is unclear how Defendants understood these questions to be asking whether Plaintiff had deleted any additional relevant messages. However, a plain reading of the testimony reveals that Plaintiff in no way testified that he did not recall whether he had "deleted any other relevant emails or Facebook messages," as Defendants claim. Accordingly, Defendants have no basis to conclude that any other messages exist or are relevant to any claims or defenses in this matter. Therefore, Defendants' misrepresentation of Plaintiff's testimony should not be considered in connection with Defendants' motion. Moreover, prior to the initiation of litigation, Plaintiff was not in possession of any additional relevant electronic communications that he did not ultimately produce to Defendants and any emails to or from HR, People Direct, or Greg Byrd are already in Defendants' possession and cannot be spoliated.

As Defendants have failed to show any evidence of spoliation in this matter, Defendants' motion should be denied in its entirety.

**II.      Dismissal Is Not Warranted in This Case**

To the extent that this Court does find evidence of spoliation, dismissal is not an appropriate sanction. "Only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation" may the court "(A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e). It should be noted that sanctions are appropriate only where "there is evidence that a party's spoliation of evidence threatens the integrity of this Court." Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Indeed, "[s]poliation sanctions

serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been without spoliation." Id. Spoliation sanctions also serve a punitive purpose by "punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." Id.

The Third Circuit decides spoliation based sanctions by evaluating the following three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994). "Dismissal or suppression of evidence are the two most drastic sanctions" and "should only be imposed in the most extraordinary of circumstances" Mosaid Techs., 348 F. Supp 2d at 335. Indeed, "[a] sanction that has the drastic result of judgment being entered against the party who has lost or destroyed evidence must be regarded as a last resort, to be imposed only if no alternative remedy by way of a lesser, but equally efficient sanction is available." Int'l Fin. Co., LLC v. Jabali-Jeter, No. 18-CV-2120, 2019 WL 2268961, at *17 (E.D. Pa. May 28, 2019) (quoting Baliotis v. McNeil, 870 F. Supp. 1285, 1289 (M.D. Pa. 1994)).

### A.    Plaintiff's Degree of Fault in Deleting Messages Was Minimal

When deleting messages from his iPhone, Plaintiff was entirely unaware that those messages would be deleted permanently and not otherwise recoverable. With respect to any messages Plaintiff deleted following the initiation of his duty to preserve discoverable evidence, Plaintiff did so at the direction of an Apple store employee and in an attempt to boost the

performance of his cell phone. As Plaintiff testified, the deletion of messages only ever took place on his phone. Pl. Dep at 67. To Plaintiff's knowledge, he was only deleting the messages as they were stored in his iPhone. Plaintiff was unaware that, in so doing, those messages would not otherwise be recoverable from any other source, including the cloud. Accordingly, it is clear that his intention was not to deprive Defendants of relevant information for use in litigation. Rather, his intention was solely to increase the processing power of his iPhone.

Furthermore, this is not a case of a company or individual systematically deleting unfavorable emails while preserving favorable ones. Consistent with his intention to clear space on his iPhone, Plaintiff deleted every single email, indiscriminately. Notably, Plaintiff did not purge his iPhone until sometime in or after 2018, after he had already produced all relevant documents in his possession to Defendants.  Prior to the initiation of litigation, Plaintiff provided to counsel all potentially relevant electronic communications in his possession, including all email and social media messages. Prior to the production of documents, Plaintiff again conducted a search for all relevant documents in his possession and found no additional relevant ESI, including email and social media messages. At the time of any purge of Plaintiff's email and social media, Plaintiff had already produced all relevant communications in his possession. Clearly, Plaintiff acted with no ill intentions and, accordingly, should be found to have minimal fault with respect to the deletion of any messages.

### B.    Defendants Have Suffered No Prejudice

All of the messages that Defendants claim have been deleted, Defendants have or would have access to. With respect to any emails from Plaintiff to Safelite, it goes without saying that these emails are already in Defendants' possession. As for any email correspondence with Clear

Vision, Defendants' attempt to suggest that Plaintiff testified he deleted emails, which referenced Plaintiff's termination from Safelite or his application for employment with Clear Vision, is simply untrue. Moreover, Safelite was permitted to subpoena documents directly from Clear Vision. Notably, Clear Vision did not produce a single email between Plaintiff and Clear Vision in response to Defendants' subpoena. Furthermore, in Plaintiff's deposition, Defendants chose not to ask about the substance of any email correspondence Plaintiff may have had with Anthony Marcolongo or Clear Vision. Rather, Defendants only asked, generally, whether Plaintiff "communicate[d] with Anthony or anybody else at Clear Vision through e-mail", to which Plaintiff responded, "[t]o the best of my recollection, I think so, I think I e-mailed him, but I don't know." Pl. Dep at 67. Defendants made no further inquiry concerning the contents of any possible emails. Because Defendants elected not to inquire further about the contents of any possible emails, they should not now be permitted to speculate that the deletion of any such emails were in any way prejudicial to Defendants.

With respect to communications with Nicholas Walters, Defendants make no claim that Nicholas Walters has engaged in spoliation, nor have they any basis to make such a claim. Defendants have engaged in discovery in the Walters matter and Walters has produced all relevant communications in his possession. Furthermore, in Plaintiff's deposition, Defendants merely asked the mode by which Nicholas Walters sent Plaintiff specific documents. Notably, Plaintiff produced those specific documents, at Bates numbers P0067-70, in connection with the production of all relevant documents in his possession at the commencement of this litigation. Similar to Defendants' questioning regarding Clear Vision, Defendants did not inquire about the contents of the email from Mr. Walters. Rather, Defendants chose to ask only whether Mr.

Walters had sent the documents via email. Accordingly, Defendants have no basis to assume that the deletion of any such email was prejudicial to Defendants.

Finally, with respect to any Facebook message from Plaintiff to Stephen McCafferty, Mr. McCafferty is a Safelite employee and, accordingly, Safelite is fully capable of procuring any message that may have existed from Mr. McCafferty. Further, it is unclear how Defendants have been prejudiced by any deletion of this message. In Plaintiff's deposition, Defendants asked, "After you found out that it was Steve who did the warranty work, did you send him a message on Facebook asking him why he didn't tell you that it was him that did the warranty work?" Pl. Dep. at 297. Additionally, Plaintiff testified that he recalled sending Mr. McCafferty a message and Defendants boast that they were able to confirm that this message existed "through other sources." Def. Br. at 7. It seems, then, that Defendants are in possession or have knowledge of the contents of any Facebook message sent by Plaintiff to Mr. McCarftery. Accordingly, it seems that Defendants have not been deprived of any information with respect to this message, or were in any way otherwise prejudiced by any deletion of the message.

Clearly, Defendants' purported prejudice lies solely on conjecture and speculation that they have been deprived of relevant emails simply because Plaintiff has deleted messages from his phone. Defendants do not point to a single communication with specificity that has been deleted to which they do not have access or of which they already have full knowledge of the contents.  As a result, Defendants have failed to show that they have suffered any prejudice in this matter.

C.    Dismissal Is Not an Appropriate Sanction

"[U]pon finding prejudice to another party from the loss of...information, [the court] may order measures no greater than necessary to cure the prejudice[.]" Fed. R. Civ. P. 37(e).  The drastic sanction of dismissal is not appropriate, as the deletion of any emails or messages by Plaintiff was not the sort of extraordinary circumstances which require such a "last resort" punishment. Indeed, the "last resort" sanction of outright dismissal is so rarely applied that Plaintiff has been unable to find a single Third-Circuit case employing it, let alone after the 2015 amendments to Fed. R. Civ. P. 37(e). Furthermore, the cases cited by Defendants in support of their argument for dismissal are entirely distinguishable and highlight the egregious behavior necessary to warrant the drastic sanction of dismissal, which is lacking here.

Defendants' representation of the holding in Coyne v. Los Alamos Nat'l Sec. LLC is completely disingenuous. 2017 U.S. Dist. LEXIS 67021 (D.N.M. March 21, 2017). In fact, the Coyne court's finding that dismissal was warranted hinges on a determinative factor that is entirely distinguishable from the present suit. As an initial matter, Defendants' absurd assertion that the facts in Coyne were a "similar series of events" is wildly inaccurate. In Coyne, the plaintiff intentionally deleted information one (1) day before the scheduled inspection of her iPhone. Here, there is no similarity with respect to temporal proximity or the clear evidence of intent to deprive the other party of the information. Any purge of Plaintiff's iPhone did not occur until after Plaintiff had responded to Defendant Safelite Fulfillment, Inc.'s Requests for Production of Documents. Accordingly, Plaintiff had already produced all of the relevant documents in his possession.

While it is true that the Coyne court did find dismissal to be the only effective sanction, the court noted that the plaintiff and her husband had been involved with several prior lawsuits, in which they habitually engaged in discovery violations, including spoliation. In those other matters, the plaintiff and her husband were fined for their infractions, for a total amount of approximately $11,000. Of that $11,000, the plaintiff and her husband had failed to pay any of their fines. In finding that additional monetary sanctions would have no deterrent effect on this plaintiff, coupled with the egregious and calculated deletion of relevant information on the eve of production, the court found dismissal to be appropriate.

Even more egregious, in In re Krause, following a motion to compel, the court ordered the production of specific computers. 367 B.R. 740, 768–69 (Bankr. D. Kan. 2007), aff'd, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), aff'd, 637 F.3d 1160 (10th Cir. 2011). Following the court's order, Krause ran computer software commonly utilized to sift through and systematically delete information from computers on the devices to be produced. Id. The court found that the software was run on the date the court issued the order and again on the date that the computers were to be produced. Id. Further, Krause refused to produce any back-ups of the devices that he maintained on external hard drives. Id.

Similarly, in Philips Elecs. N. Am. Corp. v. BC Tech., after being ordered to produce documents on three separate occasions, BC Tech, utilized software to delete information from devices to be produced. 773 F. Supp. 2d 1149, 1213 (D. Utah 2011). Further, BC Tech "reimaged" hard drives by overwriting files with massive amounts of other files to ensure that any deleted files were permanently deleted. Id. at 1194, 1213. Notably, this "reimaging" took place one to two days prior to the scheduled production of the hard drives. Id. at 1207.

17

In <u>OmniGen Research v. Yongqiang Wang</u>, the court granted injunctive relief ordering the production of all of the content on the defendants computer within seven (7) days. 321 F.R.D. 367, 370 (D. Or. 2017). The defendant failed to produce the contents of the computer. Rather, nine (9) days after the court's order, the defendant donated the computer to Goodwill. Additionally an inspection of the defendant's wife's tablet revealed remnants of relevant deleted emails. <u>Id.</u> at 374. Further, while the tablet was being inspected, defendants deleted additional emails from the tablet remotely. <u>Id.</u> Lastly, inspection of the metadata on ESI the defendants produced showed that documents had been manipulated after the commencement of litigation. <u>Id.</u> at 376

Unlike the cases above, Plaintiff's deletion of any messages from his iPhone was not done with the intention to deprive Defendants of information to use in litigation. Plaintiff had not been ordered by this Court to produce specific documents and then delete them in an attempt to conceal their contents. Rather, Plaintiff's intentions were entirely benign, in that he merely intended to increase the speed of his iPhone. This is not the sort of egregious behavior and complete disregard of court orders that warrants the drastic and "last resort" sanction of dismissal. Given that Plaintiff acted with no ill-intention, and that Defendants have not suffered any identifiable prejudice, dismissal is not appropriate.

### III. There Can Be No Adverse Inference Because Defendants Can Only Speculate as to the Existence of Relevant Messages

As stated above, "[a] proper spoliation claim requires the moving party to set forth evidence with specificity." <u>Flanders</u>, 2015 WL 5022734, at *5. Again, Defendants have been unable to point to a single relevant document which has been destroyed. Rather, Defendants

make the conclusory assertion that relevant documents must have been destroyed because Plaintiff cleared out the contents of his iPhone. This is not a proper basis to maintain a claim for an adverse inference. By failing to identify any specific communications, there are no communications for which there can be any adverse inference.

In <u>Bensel</u>, the party moving for spoliation sanctions argued using similarly speculative claims, such as "the spoliation was so widespread and covered such a long period of time it can only be concluded that substantial evidence was destroyed which would have been favorable to Plaintiffs." <u>Bensel</u>, 263 F.R.D. at 153. The court, in <u>Bensel</u>, found that "such a catch-all statement, along with vague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by the Third Circuit to impose sanctions or even make a finding of spoliation." <u>Id.</u>

The court also noted that sanctions were inappropriate as there was no evidence of "bad-faith." <u>Id.</u> Similarly, here, Plaintiff acted without bad faith. As stated by Defendants, Plaintiff "was anything but selective when deciding to delete all of his emails and social media." Def. Br. at 9. Indeed, Plaintiff's deletion of messages was solely for the purpose of speeding up his iPhone. Plaintiff's failure to appreciate the significance of deleting information from his iPhone does not equate to bad faith. Defendants have put forth no evidence suggesting that Plaintiff's deletion of messages was with the "intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e). Moreover, the fact that Plaintiff reviewed his electronically stored information before the filing of his claim, provided same to his counsel, and reviewed his electronically stored information again prior to responding to discovery in August 2016, in no

way suggests that the deletion of his emails or social media messages at the time he purged them in or after 2018 included the deletion of any relevant email or messages.

With respect to the message from Plaintiff to Stephen McCarfferty, it is clear from Defendants' question of Plaintiff in his deposition that Defendants are fully aware of the content of that message. Defendants should not now be permitted to seek an adverse inference suggesting that the content of this message was not in Plaintiff's favor when they already know the content of the message.

Accordingly, an adverse inference is not an appropriate remedy in this matter.

### IV. Monetary Sanctions Are Inappropriate and Would Cause Plaintiff Undue Hardship

Monetary sanctions are inappropriate in light of the economic circumstances of the parties and the equitable considerations of this matter. "Where a district court decides to award a monetary sanction, such as attorney's fees, the total amount of such a sanction (as well as the initial decision whether to impose such a sanction) should be guided by equitable considerations." Doering v. Union Cty. Bd. of Chosen Freeholders, 857 F.2d 191, 195 (3d Cir. 1988). See, e.g., Faraci v. Hickey–Freeman Company, Inc., 607 F.2d 1025, 1028 (2d Cir. 1979) ("Recent legislation extending the power of federal courts to award attorney's fees by no means requires abandonment of the equitable principles that have traditionally governed a court's discretion in such matters. On the contrary, the express grant of authority to award fees presumes continued application of equitable considerations in appropriate cases, both to effectuate the broader legislative purpose and to do justice in the particular case."); United States Steel Corp. v. United States, 519 F.2d 359, 363 (3d Cir. 1975) ("Traditionally, where a fee-shifting determination is committed by statute to a court's discretion, equitable considerations govern.").

Indeed, "[i]nfluenced by the particular facts of a case, the court may decide that the circumstances warrant imposition of only part of the adversary's expenses or perhaps only a reprimand." Lieb v. Topstone Indus., Inc., 788 F.2d 151, 158 (3d Cir. 1986).

With respect to the imposition of appropriate sanctions, the court's analysis under Federal Rule 11 is substantially similar to spoliation sanctions under Federal Rules 37(e). Similar to the Federal Rule 37(e), under Federal Rule 11, courts must impose the least severe sanction "suffices to deter repetition of such conduct or comparable conduct by others similarly situated". Balthazar v. Atlantic City Med. Ctr., 137 Fed. Appx. 482, 490 (3d Cir. 2005); Fed. R. Civ. P. 11(c)(4); compare Schmid, 13 F.3d at 79 (courts must consider "whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.")(citing Jamie S. Gorelick, Steven Marzen and Lawrence Solum, Destruction of Evidence, § 2.1 (1989) ("courts select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.")). Concerning monetary sanctions, "the court's administration of Rule 11 is to be guided by equitable considerations." Soo San Choi v. D'Appolonia, 252 F.R.D. 266, 267 (W.D. Pa. 2008). Indeed, "the court may consider the relative wealth of the parties in determining the final amount in order to insure that a losing party is not subjected to financial ruin." Doering, 857 F.2d at 196 (citing Napier v. Thirty or More Unidentified Fed. Agents, Employees or Officers, 855 F.2d 1080, 1094 n. 12 (3d Cir. 1988) (internal quotations omitted)).

In Soo San Choi, the court found that the economic considerations in that matter did not favor a finding of monetary sanctions. Id. at 268. Due to the economic disparity between the parties and the fact that the party seeking sanctions did not show that it suffers from economic

disadvantages or had difficulty finding adequate representation, the court found that the public acknowledgement of the violation was an adequate sanction. Id.

The remedial and deterrent purposes behind spoliation sanctions are not intended to be used in such a way that would bankrupt, or otherwise financially ruin individual litigants. Similar to Soo San Choi, the economic circumstances do not warrant an award of monetary sanctions. Safelite is the nation's largest auto glass specialist company and a subsidiary of Belron, the world's largest vehicle glass company operating across over 35 countries and 6 continents with over 29,000 employees. Safelite has extensive resources. In fact, Safelite's resources are so vast the Safelite Group employs approximately 13,000 individuals operating more than 720 locations in the United States.[2] In contrast, Plaintiff is an individual litigant who is a stay-at-home father taking care of his children. Manning Cert. at 23-24. He is not employed, makes no money, his family of four has savings of under $400, and his family is supported exclusively by his wife's annual income of approximately $45,000. Manning Cert. at 23, 25-27, 30. Plaintiff's family's health insurance and medical expenses average in excess of $1,200 per month. Manning Cert. at 28. Plaintiff's family lives entirely paycheck to paycheck. Manning Cert. at 29. Requiring Plaintiff to pay for Safelite's team of attorneys, or any attorneys' fees or expenses in connection with this matter, in light of Plaintiff's financial situation, is contrary to any equitable principle and will in all likelihood financially ruin Plaintiff and his family.

Further, monetary sanctions are inappropriate as Defendants have made no attempt to recover any of the messages they claim to have been destroyed and any attempt to discover

---

[2] The information concerning Safelite and Belron is taken directly from their respective websites: https://www.safelite.com and https://www.belron.com.

messages from alternative sources has been fruitless. Accordingly, Defendants have not incurred any expenses in connection with the deletion of Plaintiff's messages, other than those self-imposed expenses associated with filing the present motion. Defendants did not subpoena Plaintiff's email provider or Facebook in order to attempt to retrieve the messages--not that a subpoena would be necessary for the Facebook message considering that Defendants have access to the message and/or its content through Safelite employee Stephen McCafferty.

Additionally, Defendants were able to seek discovery from Nicholas Waters in connection with any emails between him and Plaintiff during discovery in the Walters matter. This discovery in the Walters matter occurred regardless of Plaintiff's actions respecting email exchanged with Mr. Walters.

The only additional discovery that Defendants conducted tangentially related to any purportedly deleted message was their document subpoena to Clear Vision, which revealed that no emails between Plaintiff and Clear Vision existed. To the extent that Defendants attempt to argue that their subpoena to Clear Vision was solely in response to Plaintiff's deletion of emails, it should be noted that Defendants sought the following:

> All records relating to former employee and former independent contractor, Greg Manning (DOB: 09/28/1983 SS#: XXX-XX-1678), including his personnel file, employment application and resume, his hire date(s), payroll records and independent contractor payments, job description, independent contractor agreement, documents relating to the termination of his employment and the termination of his relationship as an independent contractor, any email communications with Greg Manning or statements by Greg Manning regarding Safelite or his former employment with or separation from Safelite, and any doctors' notes or medical documentation submitted by Mr. Manning or submitted on Mr. Manning's behalf during his employment, including, but not limited

to, any documents requesting, approving or denying any job accommodations for Mr. Manning.

Counsel Cert. Ex. B. As Defendants, clearly, sought more than just email communications that may have been deleted by Plaintiff, Defendants would have served this subpoena irrespective of the deletion of any emails by Plaintiff. Further, Defendants' subpoena to Clear Vision revealed the existence of no emails between Plaintiff and Clear Vision. As a result, Defendants should not be awarded attorney's fees in connection with this subpoena.

Given that Plaintiff's deletion of any messages was benign, in that he merely intended to increase the speed of his iPhone, rather than deprive Defendants of information for use at trial, and that Defendants have not suffered any identifiable prejudice as a result, monetary sanctions would be a particularly harsh punishment and serve only to financially destroy Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Respectfully submitted,
SMITH EIBELER, LLC

By:     */s/Robert W. Smith*
ROBERT W. SMITH