[Doc. No. 68]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

**GREG MANNING,**

                **Plaintiff,**

        **v.**                                    **Civil No. 17-2824 (RMB/MJS)**

**SAFELITE FULFILLMENT, INC.**
**et al.,**

                **Defendants.**

## R E P O R T  A N D  R E C O M M E N D A T I O N

This matter is before the Court on the referral of the "Motion for Judgment Based on Plaintiff's Spoliation of Evidence Pursuant to Rule 37(e)" ("motion") [Doc. No. 68] filed by defendants Safelite Fulfillment, Inc. ("Safelite") and Nick Moran ("Moran") (collectively, "defendants"). The Court is in receipt of the opposition filed by plaintiff Greg Manning ("plaintiff") [Doc. No. 72], as well as defendants' reply [Doc. No. 77]. Pursuant to Fed. R. Civ. P. 78 and Local Civ. R. 78.1(b), the Court makes this Report and Recommendation without oral argument from the parties. This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1).

Defendants' motion presents the issue of whether spoliation sanctions should be imposed against plaintiff pursuant to Fed. R.

Civ. P. R. 37. Plaintiff alleges he was harassed, discriminated against, and wrongfully terminated in retaliation for plaintiff's alleged and/or perceived disabilities. Defendants claim that during the course of discovery they became aware plaintiff failed to preserve certain electronically stored information ("ESI") in the form of emails and Facebook messages. See Mot. Br. at 2-3 [Doc. No. 68-1].[1] Defendants assert that plaintiff's duty to preserve evidence relating to this matter arose no later than December 6, 2016, on which date he notified Safelite that he believed he was the victim of discriminatory treatment and retaliation. See Reply Br. at 2 [Doc. No. 77]. Defendants further assert that plaintiff knowingly and intentionally deleted discoverable and relevant ESI after this date, causing them substantial prejudice. By the present motion, defendants seek dismissal of the action or, in the alternative, an adverse inference instruction and monetary sanctions.

For the reasons set forth herein, the Court finds, based on the current record, that defendants have not not satisfied their burden of demonstrating plaintiff destroyed discoverable ESI with the intent to deprive defendants of the information's use in litigation as contemplated under Fed. R. Civ. P. 37(e)(2). The Court does, however, find that plaintiff's failure to preserve

---

[1] References to page numbers are associated with the pagination of the parties' actual briefs and not their assigned ECF Stamps.

certain ESI has caused prejudice to defendants warranting the imposition of relief pursuant to Fed. R. Civ. P. 37(e)(1). Accordingly, the Court respectfully recommends that defendant's motion be GRANTED in part and DENIED in part. The Court makes the following findings in support of this Recommendation.

## Background

Plaintiff, Greg Manning, commenced this employment action on March 3, 2017 in the Superior Court of New Jersey, Camden County against defendants Safelite, Moran, and ABC Companies 1-10 asserting various claims arising out of alleged discrimination and retaliation in the workplace. See Compl. [Doc. No. 1 at 9-24](the "Complaint"). Plaintiff, a former employee of Safelite, alleges that beginning in or around July 2016, and upon plaintiff returning to work from a medical leave of absence, defendants unlawfully discriminated, harassed, and retaliated against plaintiff because of his alleged and/or perceived disabilities in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1. Id. ¶¶ 5-52. Specifically, plaintiff alleges the following four claims pursuant to the NJLAD: (1) retaliation, (2) hostile work environment, (3) disability discrimination, and (4) failure to provide reasonable accommodations. Id. ¶¶ 53-80. Defendants subsequently removed the case to federal court. See Doc. No. 1.

Plaintiff began his employment with Safelite in July 2005 as a Repair Medic. See Compl. ¶ 5. Around the same time, plaintiff

alleges he was diagnosed with Type 1 diabetes. Id. ¶ 6. Plaintiff contends that his performance met and/or exceeded the reasonable expectations of Safelite throughout his employment and that, in or about 2006, he received a promotion to the position of Technician. See id. ¶¶ 7-8. Nearly a decade later, in or around July 2016, plaintiff alleges that, upon returning to work from a medical leave of absence after undergoing ankle surgery, defendant Moran became his direct supervisor. See id. ¶¶ 9-10. Plaintiff further alleges that Moran began subjecting plaintiff to a hostile work environment because of his alleged and/or perceived disabilities and need for reasonable accommodations as a result thereof. Id. ¶ 11. Plaintiff contends Moran's actions "include[d] regularly mocking, taunting and making other offensive comments or [directing] other conduct" at plaintiff because of his alleged and/or perceived disabilities, including diabetes and obesity. Id. ¶ 12. Plaintiff also contends that, after he began to "suffer from symptoms related to his disabilities[,] such as lightheadedness, dizziness, and nausea," he informed Moran that his diabetes and the extreme heat were causing his health to suffer and "specifically informed [] Moran that he was concerned that he was going to pass out on the job[,] especially while driving." Id. ¶¶ 14-16. As such, plaintiff alleges he "requested that Moran provide him with a temporary reduction in dispatch assignments or work, especially on hot days," but that Moran "summarily rejected" such requests. Id. ¶¶ 17-19.

Plaintiff asserts that shortly thereafter he complained to Safelite's Leave of Absence Specialist, Danielle Sennet, about Moran's alleged "refusal to provide [him with] accommodations and the harassing and discriminatory conduct directed at [plaintiff]." Id. ¶¶ 20-21. Plaintiff further asserts that he also complained to Safelite's regional human resources representative, Greg Byrd, but that "Mr. Byrd never responded." Id. ¶¶ 26-27. However, plaintiff alleges that on or about August 24, 2016 he provided Safelite with medical documentation concerning his disabilities and his need for reasonable accommodations. Id. ¶ 30. According to plaintiff, Safelite advised him it would grant his requested accommodations. Id. ¶ 31. Nevertheless, plaintiff alleges that Moran subsequently refused to provide any accommodations, taunted him, and retaliated against him. Id. ¶ 32-41. For example, plaintiff alleges he was issued an unwarranted and pretextual disciplinary warning by Moran in October 2016 for falsifying signatures on work orders for customer warranties. Id. ¶ 42. Plaintiff alleges that when confronted, he told Moran that "he had always been instructed . . . to write a squiggly line on the document for customers who were not present[.]" Id. ¶ 43. In response, plaintiff alleges Moran stated that "he did not care and threatened plaintiff to either sign the disciplinary form or be fired." Id. ¶ 44.

On December 2, 2016, plaintiff was placed on administrative leave for causing damage to a window plaintiff allegedly replaced

in September 2016. Id. ¶ 45. On December 6, 2016, plaintiff notified Safelite that he believed he was the victim of discriminatory treatment and retaliation. See Reply Br. at 2-3. Plaintiff was then terminated on December 7, 2016 for allegedly violating Safelite's Installation Compliance Agreement ("ICA"). See Compl. at ¶ 48. Plaintiff maintains that defendants' conduct and/or treatment of plaintiff, including his disciplinary action and termination, were in retaliation for plaintiff's exercised, attempted exercise and/or enjoyment of rights afforded to him under the NJLAD.

Upon removal of the action from state court, this Court issued an Order on April 25, 2017 arranging an Initial Scheduling Conference and instructing the parties' counsels to comply with Local Civil Rule 26.1(d), which requires that each counsel review with their client their discovery obligations. See Doc. No. 3. Defendants served their First Requests for Production of Documents on Plaintiff on June 26, 2017 requesting documents and ESI retained on plaintiff's computer(s), electronic storage device(s), and cellular telephone(s), including e-mails, instant messages, or text messages reflecting or relating to plaintiff's employment with Safelite, his separation, and any allegations contained in the Complaint. See Mot. Br. at 2. The discovery requests also included a request for all documents and ESI retained on social networking sites relating to the same. Id.

6

Defendants allege that in 2016 as well as in the weeks and years following plaintiff's termination, plaintiff destroyed emails and social media messages relevant to his claims against Safelite that were not produced in response to its discovery requests. See Reply Br. at 1. Specifically, defendants maintain that plaintiff wrongfully failed to produce and destroyed (1) emails to Safelite representatives Greg Byrd and Danielle Sennet; (2) emails to Clear Vision Auto Glass ("Clear Vision"), a company plaintiff sought work with in February 2017; (3) emails to Nicholas Walters, a former Safelite employee; (4) Facebook messages to Stephen McCafferty, a Safelite employee; and, (5) additional emails that originated from plaintiff's personal email account. See Mot. Br.; Reply Br.

During his deposition on May 11, 2020, plaintiff identified certain communications and stated he deleted all his personal emails "at least once" since 2018. See Manning Dep. at 67-68. Plaintiff also stated that he believed he deleted his Facebook messages around the same time he deleted his emails. Id. at 292. Defendants attribute these deletions to an attempt by plaintiff to intentionally deprive defendants of relevant and discoverable information. See Reply Br. at 13-14. On the other hand, plaintiff represents he is unsophisticated with respect to technology and that he deleted the emails and messages to improve the speed and performance of his iPhone on the advice of an Apple store employee

in or after 2018. <u>See</u> Br. in Opp. at 3 [Doc. No. 72]. Plaintiff certified that prior to conferring with counsel, his practice was to delete email and Facebook messages from his iPhone on a regular basis. Manning Cert. at ¶ 4, [Doc. No. 72], however, plaintiff did not specifically certify that any of the ESI in question was deleted prior to 2018.

All parties agree the emails and messages were deleted. However, questions concerning plaintiff's duty to preserve the information, the discoverability and relevance of the information, plaintiff's intent to deprive defendants of the information, and the resulting prejudice to defendants are disputed.

**First**, with respect to plaintiff's emails to Safelite representatives Greg Byrd and Danielle Sennet, plaintiff claims that by virtue of these emails being sent to and from Safelite, Safelite has access to the emails and it is therefore impossible for plaintiff to have deprived defendants of the information. <u>See</u> Br. in Opp. at 6. Further, plaintiff argues that because the email exchange with Greg Byrd occurred on August 17, 2016 (months before plaintiff's termination), he was under no duty to preserve these emails in anticipation of litigation. <u>Id.</u> As to the December 8, 2016 post-termination email exchange between plaintiff and Danielle Sennet, plaintiff contends the substance of the correspondence consists of a request by plaintiff for Ms. Sennet to forward him a copy of the ADA paperwork he had previously

submitted to her in August 2016 and Ms. Sennet's response forwarding the documents. Id. at 6-7. Plaintiff produced these documents, bearing Bates number P-0005-0011, and claims defendants have failed to show how the substance of the email is in any way relevant to any of the claims or defenses in this case. Id. at 7. Accordingly, plaintiff maintains this category of emails cannot be used to show spoliation. While defendants concede that no sanction for spoliation is necessary with respect to emails between plaintiff and Safelite employees, they argue that plaintiff's failure to produce and deletion is indicative of his intent to deprive defendants of information. See Reply Br. at 5-6.

**Second**, defendants allege plaintiff destroyed relevant and discoverable emails he sent to Clear Vision in February 2017, which were not produced in response to defendants' Request for Production. See Mot. Br. at 9. In response to a subpoena issued by defendants, Clear Vision produced its paper file on plaintiff including an email from plaintiff's personal email account to Clear Vision in which plaintiff stated "I'm currently working at Safelite and looking for a change." See Reply Br. at 10. Defendants aver that "rather than preserve and produce emails in which he would be obviously caught lying (that he was employed by Safelite at the time), Manning withheld and then destroyed them." Id. According to defendants, this email chain proves plaintiff destroyed relevant

evidence and raises questions concerning whether and to what extent plaintiff improperly withheld and/or destroyed email exchanges with other prospective employers referencing his termination from Safelite. Id.

**Third**, defendants allege plaintiff failed to produce and spoliated an email exchange between himself and Nicholas Walters. Nicholas Walters, a former Safelite employee, is a friend of plaintiff who has been named as a witness in this case and is adverse to Safelite in a matter involving similar causes of action. Reply Br. at 9. In plaintiff's deposition, he acknowledged receiving documents from Nicholas Walters via email regarding the warranty job that led to his (plaintiff's) termination. See Manning Dep. at 296-297. Although plaintiff produced the specific documents sent by Nicholas Walters, at Bates numbers P0067-70, plaintiff did not produce the email exchange itself. See Br. in Opp. at 14. Plaintiff contends that defendants have no basis to assume that the deletion of any such email was prejudicial to defendants because defendants did not inquire about the contents of the email. Id. at 9. Rather, defendants chose to ask only whether Nicholas Walters had sent the documents via email. Id.

**Fourth**, defendants allege that plaintiff failed to produce and spoliated Facebook messages he had sent to Stephen McCafferty (after plaintiff was terminated) in which plaintiff allegedly indicated he knew it was Stephen McCafferty who reported the

violation that resulted in his termination. See Reply Br. at 7-8; McCafferty Dep. at 163. Although Stephen McCafferty is an employee of Safelite, his deposition testimony reflects that he does not have the Facebook messages and that he "dismissed it immediately." McCafferty Dep. at 162-163. Defendants maintain the Facebook messages contain critical evidence because "[i]f Manning's December 2016 Facebook message to McCafferty criticizes him only for ratting him out, it would essentially be a confession that Manning had committed the violation but was annoyed only that a fellow Technician had turned him in." Reply Br. at 8. Defendants further maintain that "[o]n the other hand, if Manning's . . . testimony is to be believed(,) Manning's message to McCafferty would presumably accuse McCafferty of falsifying the pictures of the vehicle or some other scheme." Id. In response, plaintiff contends that because defendants were able to confirm the existence of Facebook messages sent to Stephen McCafferty, defendants are unable to show any prejudice with respect to this message. See Br. in Opp. at 10.

**Discussion**

Defendants seek dismissal of the action, or alternatively, an adverse inference instruction and imposition of monetary sanctions. The Court must determine whether there was spoliation and, if so, which (if any) sanction(s) is or are appropriate.

1. **Legal Standard**

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable [sic] litigation." Mosaid Techs. Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004). Where a party spoliates evidence, courts have the discretion to impose sanctions. Id. "Until recently, district courts in the Third Circuit relied on both the Federal Rules of Civil Procedure and the inherent authority of the court in imposing sanctions for spoliation of any kind of evidence." Bistrian v. Levi, 448 F. Supp. 3d 454, 464 (E.D. Pa. 2020). "In 2015, however, Federal Rule of Civil Procedure 37 was amended to provide a uniform standard governing spoliation sanctions for the loss of electronically stored information." Id. "Prior to the 2015 amendment, courts applied the Third Circuit's general spoliation test to both ESI and other information."[2] Id. at 465 n.14. Since 2015, some district courts within the Third Circuit have continued to apply the Third Circuit's general test to determine whether spoliation occurred while applying Rule 37(e) in considering what

---

[2] The Third Circuit has articulated a four-factor test for determining whether a party has engaged in spoliation. Spoliation occurs where (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and, (4) the duty to preserve the evidence was reasonably foreseeable to the party. Bull v. United Parcel Serv., Inc., 665 F.3d 68, 73 (3d Cir. 2012).

sanction is appropriate, and others have relied exclusively on Rule 37(e). <u>See id.</u>[3] "Although the Third Circuit has not specifically clarified this issue, it appears that Rule 37(e) exclusively governs the spoliation inquiry, while both Rule 37(e) and the Third Circuit's own three-factor test govern the sanctions inquiry." <u>Id.</u> Accordingly, "[w]here the amended rule applies, it provides the exclusive remedy for spoliation of electronically stored information ('ESI'), foreclosing reliance on the court's inherent authority." <u>Id.</u>; <u>see also</u> <u>Martin v. Wetzel</u>, No. 1:18-CV-00215-RAL, 2020 WL 6948982, at *2 (W.D. Pa. Nov. 25, 2020). This view is further supported by the Advisory Committee Notes to Rule 37(e), which clarifies that the 2015 amendment "forecloses reliance on inherent authority . . . to determine when certain measures should be used." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.

Email and Facebook messages qualify as ESI, ergo, Rule 37(e) applies to this motion. Rule 37(e) specifically provides as follows:

---

[3] <u>See generally</u> <u>Goldrich v. City of Jersey City</u>, No. CV 15-885 (SDW)(LDW), 2018 WL 4492931, at *7 (D.N.J. July 25, 2018)(report and recommendation), <u>adopted as modified</u>, No. CV15885SDWLDW, 2018 WL 4489674 (D.N.J. Sept. 19, 2018); <u>Edelson v. Cheung</u>, No. 213CV5870JLLJAD, 2017 WL 150241, at *2-3 (D.N.J. Jan. 12, 2017; <u>Eisenband v. Pine Belt Auto., Inc.</u>, No. CV178549FLWLHG, 2020 WL 1486045, at *7-8 (D.N.J. Mar. 27, 2020); <u>In re Celgene Corp. Sec. Litig.</u>, No. CV 18-4772, 2020 WL 8870665, at *5 (D.N.J. Nov. 29, 2020).

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(1).

The advisory committee's notes to the 2015 amendment further explain the elements of spoliation of ESI. For the Court to make a finding that spoliation occurred, the moving party must show that (1) the ESI should have been preserved in anticipation or conduct of litigation; (2) the ESI was lost; (3) "the information was lost because the party failed to take reasonable steps to preserve" it; and, (4) because ESI "often exists in multiple locations," spoliation occurs only where the information is truly lost and not cannot be recovered elsewhere, restored, or replaced. Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37; see

also Goldrich, 2018 WL 4492931, at *7; Bistrian, 448 F. Supp. 3d at 465 n.14. The moving party bears the burden of showing that spoliation occurred. Goldrich, 2018 WL 4492931, at *7 (citing Lexpath Techs. Holdings, Inc. v. Welch, No. 13-CV-5379-PGS-LHG, 2016 WL 4544344, at *2 (D.N.J. Aug. 30, 2016), aff'd, 744 F. App'x 74 (3d Cir. 2018).

Upon finding that spoliation occurred, the court must then determine what sanction(s) to impose. Rule 37(e)(1) and Rule 37(e)(2) provide a framework for determining the appropriate sanction for spoliation of ESI. A court may resort to (e)(1) measures only upon finding prejudice to another party from loss of the information. Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. Subdivision (e)(2), on the other hand, does not include a requirement that the court find prejudice to the party deprived of the information. Id. This is because "the finding of intent required by the subdivision can support not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Id. Courts should exercise caution, however, in using the measures specified in (e)(2)." Id. "Finding an intent to deprive another party of the lost information does not require a court to adopt any of the measures listed in subdivision (e)(2)." Id.

In determining what sanctions to impose, courts are also guided by the Third Circuit's three-factor test in Schmid v. Milwaukee Elec. Tool Corp.. See Lexpath Techs. Holdings, Inc., 2016 WL 4544344 at *5 (quoting Bensel v. Allied Pilots Ass'n, 263 F.R.D. 150, 152 (D.N.J. 2009) (citing Schmid v. Milwaukee Elec. Tool Corp., 13 F. 3d 76, 79 (3d Cir. 1994))). Under the Schmid test, courts consider, "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Id.

**2. Analysis**

**a. The Court Reviews Defendants' Motion Under Rule 37(e)**

Defendants ask the Court to impose Rule 37 discovery sanctions pursuant to its inherent authority. For the reasons discussed above, the Court interprets Rule 37(e) as providing the exclusive remedy for spoliation of ESI, thus foreclosing reliance on the Court's inherent authority. Accordingly, the Court reviews defendants' motion under Rule 37(e).

**b. Spoliation**

As to the first element of spoliation, the Court finds plaintiff had an obligation to preserve the ESI in anticipation or conduct of litigation. In applying the rule, "a court may need to

decide whether and when a duty to preserve arose. Courts should consider the extent to which a party was on notice that litigation was likely and that the information would be relevant." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. "An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable" and when "the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded."[4] State Nat'l Ins. Co. v. Cty. of Camden, No. CV 08-5128 (NLH/AMD), 2011 WL 13257149, at *2 (D.N.J. June 30, 2011)(quoting Kounelis v. Sherrer, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)). "The duty to preserve is objective, and based on the reasonable foreseeability that such information would be requested in discovery." Lexpath Techs. Holdings, Inc., 2016 WL 4544344, at *3 (quoting Bull, 665 F.3d at 78 n. 12.)) On December 6, 2016, plaintiff notified Safelite that he believed he was the victim of discriminatory treatment and retaliation. See Reply Br. at 2-3. The Court therefore finds that by December 6, 2016 at the latest, plaintiff should have reasonably known that information on his email and Facebook accounts reflecting or

---

[4] "Rule 37(e) is based on [a] common-law duty; it does not attempt to create a new duty to preserve." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.

relating to his employment with Safelite, his separation, and any allegations to be later set forth in in the Complaint would be requested in discovery. He therefore had a duty to preserve it. With respect to plaintiff's email exchange with Greg Byrd from August 17, 2016 (several months before his termination), plaintiff was still under a duty to preserve this information because he presumably had it in his possession on December 6, 2016 given that the deletion of emails and messages from his iPhone did not occur until in or after 2018 or, at the very least, he did not specifically state this email exchange was deleted before that time when certifying that he periodically deleted emails and Facebook messages from his iPhone. See Br. in Opp. at 3. Plaintiff's email exchange with Clear Vision should have similarly been preserved because plaintiff referenced his employment with Safelite and the exchange took place in the month before the action was filed. Reply Br. at 18. Regarding emails exchanged with Nicholas Walters, plaintiff was under a duty to preserve those communications as they pertained to Safelite's warranty procedures. See Manning Dep. at 296-297. No facts exist in the record for the Court to find these emails were deleted before plaintiff's duty to preserve them arose. Likewise, the Court finds that Facebook messages to Steve McCafferty should have been preserved based on Stephen McCafferty's deposition testimony that plaintiff messaged him on Facebook regarding the violation after

plaintiff's termination. See McCafferty Dep. at 162-163. Although plaintiff certified that prior to conferring with counsel, his practice was to delete email and Facebook messages from his iPhone on a regular basis (Manning Cert. at ¶ 4, [Doc. No. 72]), plaintiff did not specifically certify that any of the ESI in question was deleted prior to 2018 other than to state that he did conduct a search of his email and social media prior to initiating the litigation and producing documents and did not find anything – a fact he apparently "did not recall" at his deposition. See Manning Cert. at ¶¶ 6-8. Plaintiff's certification, nonetheless, confirms that he deleted his emails and Facebook messages in 2018 – after commencing this action on March 3, 2017 and during the period of fact discovery. See Manning Cert. at ¶¶ 11-16. Moreover, messages and emails that should have been retained after December 6, 2016 are simply not available. Accordingly, the first element of spoliation is satisfied as to each category of ESI at issue.

The second and third elements of spoliation are also met, as it is undisputed that the ESI was located on plaintiff's personal iPhone and that it was deleted by him without preserving it. Plaintiff does not dispute that he had control of the email or Facebooks accounts or that he deleted the emails and messages. The Court finds that Plaintiff's duty to preserve the ESI required him to take reasonable affirmative steps such as backing up the ESI on an external device or in a separate, secure location before

Case 1:17-cv-02824-RMB-MJS    Document 79    Filed 04/29/21    Page 20 of 34 PageID: 2794

deleting the contents. See Goldrich, 2018 WL 4492931, at *7; see also Moody v. CSX Transportation, Inc., 271 F.Supp.3d 410, 428 (W.D.N.Y. 2017) ("Courts routinely hold that a party's discovery obligations include taking affirmative steps to ensure that all potentially relevant evidence is retained.") (internal quotations omitted); Feist v. Paxfire, Inc., Civ. No. 11-5436 (LGS) (RLE), 2016 U.S. Dist. LEXIS 116405, at *14 (S.D.N.Y. 2016) (awarding sanctions for, inter alia, plaintiff's failure to backup her computer before it crashed). Here, plaintiff took no affirmative measures to preserve the ESI despite his duty to do so. Plaintiff's explanation that he deleted the emails and messages in an effort to improve the speed of his iPhone does not provide a basis for the Court to find that the duty to preserve was negated. Accordingly, because the ESI was destroyed while plaintiff maintained a duty to preserve it, the Court finds the second and third elements of spoliation are met.

The Court finds the fourth element to be met with respect to certain ESI. The Advisory Committee Notes to Rule 37(e) instruct that "[i]f the information is restored or replaced, no further measures should be taken." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. With respect to plaintiff's email exchange with Clear Vision from February 2017, the Court finds the fourth element cannot be satisfied as defendants have, in fact, replaced the discovery by issuing a subpoena to Clear Vision.

20

Similarly, plaintiff's email exchanges with Safelite employees Danielle Sennet and Greg Bryd cannot be said to have been spoliated because they were retained by Safelite. As to plaintiff's Facebook messages with Stephen McCafferty, although he is an employee under the control of Safelite, his deposition testimony reflects that he does not have the Facebook message and that he "dismissed it immediately." McCafferty Dep. at 162-163. Thus, the fourth element is satisfied for this category of information because the information was truly lost and not cannot be recovered elsewhere, restored, or replaced. Likewise, the Court finds the fourth element is satisfied with respect to plaintiff's email exchange with Nicholas Walters. Nicholas Walters is a friend of plaintiff who has been named as a witness in this case and is adverse to Safelite in a matter involving similar causes of action. It can be reasonably inferred that the email exchange is truly lost because if it were capable of obtained from Nicholas Walters through discovery in that action or by other means then, presumably, defendants would already possess it.

As a final matter regarding the various categories of ESI defendants allege were spoliated, to the extent requested by defendants, the Court declines to find spoliation as to ESI which has not been identified with specificity. "[V]ague speculation as to whether evidence has been destroyed or even whether evidence was relevant does not rise to the specificity level required by

the Third Circuit to impose sanctions or even make a finding of spoliation." Bensel, 263 F.R.D. 150, 153 (D.N.J. 2009); see also Flanders v. Dzugan, No. CIV.A. 12-1481, 2015 WL 5022734, at *5 (W.D. Pa. Aug. 24, 2015) ("A proper spoliation claim requires the moving party to set forth evidence with specificity.").

### c. Prejudice

Where spoliation of ESI occurs, the Court may in its discretion issue sanctions pursuant to Rule 37(e)(1) "upon finding prejudice to another party from loss of the information[.]" Fed. R. Civ. P. 37(e)(1). The measures ordered may be "no greater than necessary to cure the prejudice." Id. "In order to establish prejudice, the party seeking spoliation sanctions must come forward with plausible, concrete suggestions as to what [the missing] evidence might have been" and "must show that its ability to prepare effectively a full and complete trial strategy has been impeded." Medeva Pharma Suisse A.G. v. Roxane Lab'ys, Inc., No. CIV.A. 07-5165 FLW, 2011 WL 310697, at *14 (D.N.J. Jan. 28, 2011)(citing Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003)(internal citations and quotations omitted)); see also Goldrich, 2018 WL 4492931, at *10 (citing GN Netcom, Inc. v. Plantronics, Inc., No. CV 12-1318-LPS, 2016 WL 3792833, at *6 (D. Del. July 12, 2016), aff'd. in part, rev'd in part, 930 F.3d 76 (3d Cir. 2019))("[P]rejudice exists where documents that are

relevant to a claim are unavailable and the moving party has come forward with a plausible, good faith suggestion as to what the evidence might have been."); <u>Percella v. City of Bayonne</u>, No. 14-3695, 2020 WL 6559203, at *11 (D.N.J. Nov. 9, 2020) (quoting <u>GN Netcom, Inc. v. Platronics, Inc.</u>, 930 F.3d 76, 83-85 (3d Cir. 2019)) ("When a party moving for spoliation cannot offer 'plausible, concrete suggestions as to what the lost evidence might have been,' there should be no finding of prejudice."). "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.

Defendants claim that prejudice resulted from the deletion of Facebook messages to Stephen McCafferty in which plaintiff allegedly indicated he knew it was Stephen McCafferty who reported the violation that resulted in his termination. <u>See</u> Reply Br. at 7-8; McCafferty Dep. at 163. Specifically, defendants maintain that "if Manning's December 2016 Facebook message to McCafferty criticizes him only for ratting him out, it would essentially be a confession that Manning had committed the violation but was annoyed only that a fellow Technician had turned him in." <u>Id.</u> at 8. Defendants further maintain that "[o]n the other hand, if Manning's . . . testimony is to be believed Manning's message to McCafferty would presumably accuse McCafferty of falsifying the

pictures of the vehicle or some other scheme." Id. In response, plaintiff contends that because defendants were able to confirm the existence of Facebook messages sent to Stephen McCafferty, defendants are unable to show any prejudice with respect to this message. See Br. in Opp. at 10. The Court disagrees with plaintiff's position. The Court finds that the contents of the unavailable Facebook messages, as testified to by Stephen McCafferty, go directly to fundamental issues implicated by the parties' claims and defenses in this action. In consideration of this information's import, and given the relative value assigned to direct evidence versus testimonial evidence, the Court finds prejudice to have resulted from defendants being deprived of the actual Facebook messages. Accordingly, sanctions are available for this category of information under Fed. R. Civ. P. 37(e)(1).

Defendants claim they have been prejudiced by the deletion of an email exchange between plaintiff and Nicholas Walters. Nicholas Walters, a former Safelite employee, is a friend of plaintiff who has been named as a witness in this case and is adverse to Safelite in a matter involving similar causes of action. In plaintiff's deposition, he acknowledged receiving documents from Nicholas Walters via email regarding the warranty job that led to his (plaintiff's) termination. See Manning Dep. at 296-297. Although plaintiff produced the specific documents sent by Nicholas Walters, at Bates numbers P0067-70, plaintiff did not produce the

email exchange itself. See Br. in Opp. at 14. Plaintiff contends that defendants have no basis to assume that the deletion of any such email was prejudicial to defendants because defendants did not inquire about the contents of the email. Id. at 9. Rather, defendants chose to ask only whether Nicholas Walters had sent the documents via email. Id. Defendants argue that the unavailability of the email exchange has prejudiced them because the email would show plaintiff and Nicholas Walters communicated regarding the warranty job that led to plaintiff's termination. While it is true that the documents plaintiff requested by email pertain to the warranty job, the Court cannot find that prejudice resulted from the loss of the email exchange itself because defendant has failed to bring "plausible, concrete suggestions" as to what the substance of the email might have contained beyond simply a request by plaintiff for the documents, which have been produced. See Medeva Pharma Suisse A.G., 2011 WL 310697 at *14. Thus, sanctions are not available for this category of information under Fed. R. Civ. P. 37(e)(1).[5]

---

[5] This recommendation is based on the record as it currently exists. If admissible evidence is developed at trial demonstrating prejudice, or intentional spoliation, it is respectfully submitted that the trial judge should then consider whether sanctions are appropriate under appropriate under Rule 37(e).

### d. Intent

Where spoliation of ESI occurs, the Court may in its discretion issue sanctions pursuant to Rule 37(e)(2) "only upon finding that the party acted with the intent to deprive another party of the information's use[.]" Fed. R. Civ. P. 37(e)(2). It is the movant's burden to demonstrate that the spoliating party acted with the intent to deprive. Karsch v. Blink Health Ltd., No. 17CV3880VMBCM, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019)(citing Rhoda v. Rhoda, 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017); Watkins v. New York City Transit Auth., 2018 WL 895624, at *10 (S.D.N.Y. Feb. 13, 2018)). Under Rule 37(e), if a court finds the party acted with the intent to deprive another party of the information's use, the court may

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2).

In Edelson v. Cheung, the Court concluded defendant intended to deprive plaintiff of ESI upon finding defendant's testimony that he deleted e-mails because his computer was acting "sluggish" lacked credibility "considering the timing in which he deleted the emails and evidence that he was attempting to prevent others from

reading the communications at issue." Edelson, 2017 WL 150241 at *4. Such evidence included the deletion of emails from an email account defendant kept hidden after the case had commenced as well as the selectiveness of the deletions. Id. at *2-3. Similarly, the Court in Goldrich v. City of Jersey City imposed sanctions under Rule 37(e)(2) upon identifying circumstantial evidence strongly supporting a finding that plaintiff acted in bad faith to intentionally deprive his adversaries of ESI. Goldrich v. City of Jersey City, No. CV15885SDWLDW, 2018 WL 4489674, at *2-3 (D.N.J. Sept. 19, 2018). The Court found that contrary to plaintiff's representations that he had transferred evidence from the laptop to two USB devices, defendant's forensic computer expert determined that the drives had never interfaced with the laptop and that none of the files on the USB drives were ever located on the laptop. Id. at *2.

Defendants cite the Coyne, Philips, and Krause cases in support of their position that severe sanctions under Rule 37(e)(2) are warranted. In Coyne v. Los Alamos Nat'l Sec. LLC, the Court found spoliation to have occurred and imposed the ultimate sanction of dismissal where data was erased from a plaintiff's phone on the day it was presented to her attorney for forensic testing in connection with her employment lawsuit. See Coyne v. Los Alamos Nat'l Sec., LLC, No. 15-CV-54 SCY/KBM, 2017 WL 3225466 (D.N.M. May 1, 2017). Dismissal was found to be appropriate where ample facts

pointed to the unmistakable conclusion that plaintiff deliberately erased the data on the eve of inspection and where plaintiff had a history of numerous discovery violations and prior sanctions. Id. Under similar circumstances, severe sanctions were imposed by the Court in In re Krause in the form of an order directing the entry of a default judgment where a debtor who was held in civil contempt for violating multiple court orders deleted electronic files the day before he turned his hard drives over to a bankruptcy trustee, and shortly after he was ordered to produce the information. In re Krause, 367 B.R. 740, 745 (Bankr. D. Kan. 2007), aff'd, No. 08-1132, 2009 WL 5064348 (D. Kan. Dec. 16, 2009), aff'd, 637 F.3d 1160 (10th Cir. 2011). The Court in Philips Elecs. N. Am. Corp. v. BC Tech. concluded dismissal was an appropriate sanction for the spoliation of evidence where, hours after the court ordered defendant to stop deleting files and to turn over certain documents, "executives and employees began deleting a massive number of files from their computers[.]" Philips Elecs. N. Am. Corp. v. BC Tech., 773 F. Supp. 2d 1149, 1163 (D. Utah 2011). Further, two days after the court ordered BCT to provide access to its ESI, an employee of defendant deleted and wiped many thousands of files from his laptop. Id. at 1178.

Here, although the spoliated ESI was discoverable and destroyed by plaintiff without preserving it, the Court declines, based on the current record, to find intent in the absence of

additional circumstances showing the deletion was carried out in order to deprive defendants of the information.[6] The timing of plaintiff's deletion weighs in favor of a finding that he was not motivated by an intent to deprive. Plaintiff testified that he deleted the emails and Facebook messages to speed up his iPhone on the advice of an Apple store employee in 2018 – long after defendants served their First Requests for Production of Documents on Plaintiff on June 26, 2017. See Br. in Opp. at 3. Plaintiff further testified that he deleted both his emails and Facebook messages around the same time. Manning Dep. at 292. Unlike the circumstances in Coyne, Krause and Philips, here the temporal remoteness of the deletion relative to the service of defendant's discovery requests suggests plaintiff did not delete the information in 2018 out of fear that the contents would harm him. Rather, at most the loss was due to plaintiff's inadvertence or negligence, not bad faith. The Court therefore cannot conclude that plaintiff acted with an intent to deprive defendants of the emails to Nick Walters and Facebook messages to Stephen McCafferty for the purpose of gaining an advantage in this litigation. Accordingly, sanctions, based on the current record, are not available under Fed. R. Civ. P. 37(e)(2).

---

[6] While the Court "has discretion to draw inferences from the record on a party's intent, it strays beyond the bounds of its discretion when . . . there is no factual basis to do so." Bull, 665 F.3d at 74.

### e. Sanctions

As set forth above, sanctions remain available only under Rule 37(e)(1) and, based on the current record, only with respect to the spoliated Facebook messages involving Stephen McCafferty. Under Rule 37(e)(1), the Court is authorized to employ sanctions "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The advisory committee note to the 2015 amendment of Rule 37(e)(1) instructs that in an "appropriate case," a court may impose sanctions on the spoliating party, "such as forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37. In fashioning the appropriate sanction, "[c]are must be taken . . . to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.[7]

---

[7] "The new rule . . . makes explicit that an adverse inference is appropriate only on a finding that the party responsible for the destruction of the lost information acted with the intent to deprive another party of access to the relevant information." Accurso v. Infra-Red Servs., Inc., 169 F. Supp. 3d 612, 618 (E.D. Pa. 2016); "The 'particularly harsh' sanctions permitted under

The Court concludes that the appropriate sanction here is to permit defendants to present evidence to the jury regarding plaintiff's deletion of the exchange between plaintiff and Stephen McCafferty on Facebook messenger and to permit the jury to consider that evidence, along with all the other evidence in the case, in evaluating credibility and making its determinations.[8] A sanction

---

Rule 37(e)(2) require clear and convincing evidence that the spoliating party acted with the 'intent to actually deprive another party of evidence.'" Karsch, No. 17CV3880VMBCM, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019) (quoting Leidig v. Buzzfeed, Inc., No. 16CIV542VMGWG, 2017 WL 6512353, at *11 (S.D.N.Y. Dec. 19, 2017)).

[8] The propriety of such a measure is well-supported by the Advisory Committee Notes as well as caselaw; See, e.g., Karsch, 2019 WL 2708125, at *21 (S.D.N.Y. June 20, 2019)(citing Franklin v. Howard Brown Health Ctr., 2018 WL 4784668, at *7 (N.D. Ill. Oct. 4, 2018) (recommending, as a Rule 37(e)(1) sanction for the spoliation of instant messages, that the parties "be allowed to present evidence and argument to the jury regarding the defendant's destruction/failure to preserve electronic evidence in this case, and that the jury be instructed as the trial judge deems appropriate") (report and recommendation), adopted ,2018 WL 5831995 (N.D. Ill. Nov. 7, 2018); Schmalz v. Vill. of N. Riverside, 2018 WL 1704109, at *7 (N.D. Ill. Mar. 23, 2018) (recommending, as a Rule 37(e)(1) sanction, "that the parties shall be allowed to present evidence to the jury regarding the destruction of the text messages and the likely relevance of the lost information; and that the jury shall be instructed that it may consider this information when making its decision," but that "the jury shall not be given specific instructions on any presumption or inference based on the destruction of the text messages"); Spencer v. Lunada Bay Boys, 2017 WL 10518023, at *13 (C.D. Cal. Dec. 13, 2017) (recommending sanctions pursuant to Rule 37(e)(1) for spoliation of text messages, including that plaintiff be granted monetary sanctions and that the parties "be permitted to present evidence and argument related to the unrecoverable text messages") (report and recommendation), adopted, 2018 WL 839862 (C.D. Cal. Feb. 12, 2018); Matthew Enter., Inc. v. Chrysler Grp. LLC, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016) (ruling, pursuant to Rule 37(e)(1), that to the extent certain testimony is presented at trial,

31

of this type is distinguishable from a mandatory or permissive adverse inference instruction and is allowable under Rule 37(e)(1) without any predicate finding of intent to deprive. First, although less severe than an adverse inference instruction, this sanction will assist to rectify the evidentiary imbalance that plaintiff created by spoliating the ESI. Second, this sanction will serve to contextualize the evidentiary imbalance for the jury, which is itself relevant evidence going to plaintiff's credibility and other factual issues. Third, it affords the district judge with flexibility to determine the scope of the spoliation evidence to be presented at trial, including any argument that may be made to the jury on this issue, and to craft any related jury instructions on a full evidentiary record.

Accordingly, it is recommended that defendants be permitted to "present evidence to the jury concerning the loss and [potential] relevance" of the exchange between plaintiff and Stephen McCafferty on Facebook messenger, and that defendants may seek a jury instruction – the exact language of which to be left to the trial judge – informing the jury "that it may consider that evidence, along with all other evidence in the case, in making its

---

"Chrysler may present evidence and argument about [plaintiff's] spoliation of customer communications," and the trial judge may, if she deems it necessary, "giv[e] the jury instructions to assist in its evaluation of such evidence or argument") (quoting Fed. R. Civ. P. 37(e)(1) advisory committee's note to 2015 amendment)).

decision." Fed. R. Civ. P. Advisory Committee Notes, Fed. R. Civ. P. 37.[9]

### f.   Additional Sanctions Not Warranted

The Court has considered defendants' requests for dismissal of the action, an adverse inference instruction and monetary sanctions. The Court finds both the sanctions of dismissal and an adverse inference instruction to be unwarranted in the absence of intentional spoliation shown on the existing record. The Court further concludes that the imposition of monetary sanctions would serve as neither a fair nor effective remedy as plaintiff has certified he is not employed, he makes no money, his family of four has savings of under $400.00, and his family is supported exclusively by his wife's annual income of approximately $45,000.00. See Br. in Opp. p. 22. While the Court recognizes that the recommended sanction may not adequately remedy all prejudice resulting from the spoliation of Facebook messages, more severe sanctions risk falling outside the bounds of that which is permissible under Rule 37(e)(1) or being greater than necessary to remedy the prejudice. See Leidig, 2017 WL 6512353, at *14.

---

[9] This recommended sanction under Fed. R. Civ. P. 37(e)(1) is based on the record as it currently exists. If admissible evidence is developed at trial demonstrating that plaintiff intentionally spoliated evidence, it is respectfully submitted that the trial judge should then consider whether a sanction under 37(e)(2) is appropriate.

## Conclusion and Recommendation

Accordingly, for all the foregoing reasons, on this 29th day of April, 2021, it is respectfully recommended that plaintiff's Motion be GRANTED in part and DENIED in part. The parties shall have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file any objections with the Clerk of the Court, pursuant to Fed. R. Civ. P. 72(b) and L. Civ. R. 72.1(a)(2).

/s/ Matthew J. Skahill
MATTHEW J. SKAHILL
United States Magistrate Judge